```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

```
INJAH UNIQUE TAFARI, 89A4807,
a/k/a RICHARD ORLANDO FAUST,

                    Plaintiff,
                                              DECISION AND ORDER
            -v-                               6:16-cv-06472(MAT)

CANDACE BAKER, JENNIFER BRINK,
ZEBRA CICCONI-CROZIER,
MAUREEN MACK, GARY TAYLOR,
JILL NORTHROP, PETER BRASELMANN,
GREGORY KELLER, PAUL PICCOLO,
JEFFREY MINNERLY, MICHAEL
KIRKPATRICK, RAYMOND COVENY,
PAUL CHAPPIUS,CARL KOENIGSMANN,
and ANTHONY ANNUCCI,

                    Defendants.
```

**INTRODUCTION**

Proceeding pro se, Injah Unique Tafari ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), instituted this action pursuant to 42 U.S.C. § 1983 while he was an inmate at Elmira Correctional Facility ("ECF"), alleging that the defendants, who are employees and representatives of ECF, denied him adequate medical care in violation of his Eighth Amendment rights. On initial screening of the Complaint, Plaintiff—who has garnered "three strikes" under 28 U.S.C. § 1915(g)—was granted leave to proceed in forma pauperis ("IFP") on the basis that he had

adequately alleged he was in "imminent danger of serious physical injury," 28 U.S.C. § 1915(g).

On January 19, 2017, the Court issued a Decision and Order denying Plaintiff's Motion for a TRO/Preliminary Injunction as moot, since he was no longer at ECF,[1] and denying his Motion for Appointment of Counsel without prejudice. In the same Decision and Order, the Court denied Defendants' Motion to Revoke IFP Status and Dismiss the Complaint; this denial was without prejudice and with leave to renew as a converted motion for summary judgment, upon provision of the appropriate notice to Plaintiff.

Defendants now have filed a combined Motion for Summary Judgment and to Revoke IFP Status. For the reasons discussed below, Defendants' motion seeking revocation of Plaintiff's IFP status is granted. Defendants' motion for summary judgment is held in abeyance pending Plaintiff's payment of the filing fee. Should Plaintiff pay the full filing fee, the Court will proceed to decide Defendants' request for summary judgment. Should Plaintiff fail to pay the full filing fee, the Complaint will be dismissed with prejudice without any further action by this Court.

---

[1] Plaintiff is presently housed at Attica Correctional Facility. See DOCCS Inmate Information, available at http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ000 (last accessed Apr. 17, 2017).

**DISCUSSION**

**I.   28 U.S.C. § 1915(g)**

Defendants seek revocation of Plaintiff's IFP status under 28 U.S.C. § 1915(g), which bars prisoners from proceeding IFP after three or more previous claims have been dismissed as frivolous, malicious, or for failing to state a claim. See 28 U.S.C. § 1915(g).[2] A prisoner who has "three strikes" may only proceed IFP if he can avail himself of Section 1915(g)'s "safety valve" provision, by showing that he is "under imminent danger of serious physical injury[,]" 28 U.S.C. § 1915(g), at the time he files the complaint. Chavis v. Chappius, 618 F.3d 162, 169 (2d Cir. 2010). The Second Circuit has explained that "[a]n imminent danger is not one 'that has dissipated by the time a complaint is filed,'" id. (quoting Pettus v. Morgenthau, 554 F.3d 293, 296 (2d Cir. 2009)). "[R]ather it must be one 'existing at the time the complaint is filed,'" id. (quoting Malik v. McGinnis, 293 F.3d 559, 563 (2d Cir. 2002)).

---

[2] There is no question that Plaintiff had accrued "three-strikes" as of the date of filing this lawsuit. E.g., Tafari v. Rock, No. 1:11-cv-00057(MAT), 4/24/12 Order (Dkt. #11) at 3 (citing Tafari v. Aidala, No. 1:00-cv-00405 (W.D.N.Y. Sept. 28, 2001) (dismissing complaint with prejudice for failure to state claim, and certifying that any appeal would not be taken in good faith); Tafari v. Aidala, No. 01-0279 (2d Cir. Apr. 5, 2002) (dismissing appeal from Tafari v. Aidala, No. 1:00-cv-00405 (W.D.N.Y. Sept. 28, 2001), as frivolous); Tafari v. France, No. 06-1876 (2d Cir. Nov. 2, 2006) (dismissing appeal from Tafari v. France, No. 1:01-cv-00011 (W.D.N.Y. Mar. 10, 2006), as frivolous); Tafari v. Stein, 09-0710-pr(L), 09-2288-pr (Con.) (2d Cir. Nov. 13, 2009) (dismissing appeal from Tafari v. Stein, No. 1:01-cv-00841 (W.D.N.Y. Feb. 12, 2009), as lacking an arguable basis in law or fact)).

**II. IFP Status Should Be Revoked**

The Court is mindful that in determining whether a plaintiff has sufficiently demonstrated "imminent danger," the Second Circuit has cautioned courts to "'not make an overly detailed inquiry into whether the allegations qualify for the exception,' because § 1915(g) 'concerns only a threshold procedural question.'" Chavis, 618 F.3d at 169 (quoting Malik, 293 F.3d at 563). However, courts in this Circuit have revoked a plaintiff's IFP status after becoming aware that the plaintiff has three prior strikes and cannot show that he was under "imminent danger of serious physical injury" at the time of filing the complaint. See, e.g., Abreu v. Lira, No. 9:12-CV-1385 NAM/DEP, 2014 WL 4966911, at *1 (N.D.N.Y. Sept. 30, 2014), adopting report and recommendation, No. 9:12-CV-1385 NAM/DEP (N.D.N.Y. Apr. 11, 2014) (granting defendants' request and reversing preliminary finding that plaintiff-inmate was entitled to the imminent harm exception to the "three strikes" rule of 28 U.S.C. § 1915(g); and revoking plaintiff-inmate's IFP status; and directing payment of full filing fee before proceeding with action); McFadden v. Parpan, 16 F. Supp.2d 246, 247 (E.D.N.Y. 1998) (revoking IFP status as improvidently granted because complaint does not allege that plaintiff is in imminent danger of serious physical injury, nor could plaintiff make such an allegation on the facts asserted) (citing Banos v. O'Guin, 144 F.3d 883, 884 (5th Cir. 1998) (to

avoid bar under imminent danger exception to "three-strikes" provision, prisoner must be in imminent danger at time he seeks to file suit in district court, rather than at time of the alleged incident that serves as basis for the complaint); other citation omitted)). To revisit a preliminary finding that a three-strikes plaintiff satisfies the imminent danger exception, the court may look outside the four corners of the complaint. <u>Abreu v. Lira</u>, 2014 WL 4966911, at *7 (citing <u>Gibbs v. Roman</u>, 116 F.3d 83, 86 (3d Cir. 1997) ("If the defendant, after service, challenges the allegations of imminent danger . . ., the district court must then determine whether the plaintiff's allegation of imminent danger is credible . . . in order for the plaintiff to proceed on the merits [IFP]."), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Abdul-Akbar v. McKelvie</u>, 239 F.3d 307, 312 (3d Cir. 2001); <u>Stine v. U.S. Fed. Bureau of Prisons</u>, 465 F. App'x 790, 794 n.4 (10th Cir. 2012) ("[A]fter a district court provisionally grants IFP on the basis of a showing of imminent danger, the defendants are permitted to mount a facial challenge, based on full development of the facts, to the district court's provisional determination *on the face of the complaint* that [the prisoner] satisfies the imminent danger element.") (quotation marks omitted, emphasis and alteration in original)). The Court finds persuasive the analysis by the district court (Mordue, D.J./Peebles, M.J.) concluding that

> the Second Circuit's suggestion in <u>Chavis</u> that courts should restrict their attention to the four corners of a

-5-

> complaint in connection with an imminent-danger inquiry applies only to the court's initial review of the complaint. The Second Circuit was not asked in Chavis to consider how a court should approach a defendant's subsequent challenge to an imminent-danger finding, nor was it asked to analyze evidence adduced after the complaint was filed that may refute a court's initial finding that the complaint plausibly alleged facts suggesting plaintiff was in imminent danger of a serious physical injury at the time the action was commenced.

Abreu v. Lira, 2014 WL 4966911, at *7; see also id. at *8-10 (finding that the defendants had presented sufficient facts to reverse its preliminary finding that the imminent danger exception applied after considering affidavits submitted by prison medical staff who treated plaintiff during the relevant period, in conjunction with the plaintiff's medical records).

Plaintiff's case presents a similar situation to that in Abreu v. Lira, supra. In his Complaint, Plaintiff states that he "is still suffering Chronic Constipation, Vomiting with blood in his Urine and Feces which is extremely painful daily. *Imminent Danger lays here*." (Complaint ("Comp.") (Dkt #1) ¶ 30; capitals in original; emphasis added). Plaintiff asserts that the treatment for this alleged condition is a vegetarian diet (Id. ¶ 6(d)), which was allegedly ordered by primary care physician Dr. Peter Braselmann (Id. ¶ 7(a)). Specifically, Plaintiff asserts that on April 16, 2015, he saw Dr. Braselmann for his initial chart review and physical examination, at which time the doctor allegedly wrote out the following orders: "(a) Control A Vegetarian diet; (b) Flexeril 10 mg 3x, 30 days; (c) Eucerin cream; and (d) Vitamin E Lotion."

(Comp. ¶ 7(a)-(d)). Plaintiff asserts that the denial of the vegetarian diet has caused "chronic constipation with vomiting and blood in urine and rectal, . . . [and] excruciating pain in the stomach, penis and anal daily." (Id. ¶ 17). However, the medical records,[3] as well as Dr. Braselmann's declaration fail to substantiate Plaintiff's allegation that Dr. Braselmann "ordered" that he be placed on a "vegetarian" diet. In his declaration, Dr. Braselmann states that he saw Plaintiff on April 16, 2015, but did not place him on a vegetarian diet, and in fact, advised him that there was no vegetarian diet available at ECF. (See Braselmann Decl. ¶ 6). This is corroborated by the Ambulatory Health Record Progress Note ("AHRPN") from April 16, 2015, which indicates that Plaintiff "state[d] GAS [gastroenterologist] wants him on vegetarian diet which he's received [at] other prisons. Told [him] not available here."[4] The AHRPN dated April 16, 2015, indicates that Plaintiff was on the facility's kosher diet; the "provider [i.e., Dr. Braselmann] prefers he be on Controlled A diet" but he "cannot be on both."

Most importantly, Plaintiff's allegations of daily constipation, vomiting, blood in his urine, rectal bleeding, and

---

[3] These records are attached as Exhibits to the Declaration of Peter Braselmann, M.D. ("Braselmann Decl.") (Dkt #17-2).

[4] Plaintiff had been informed 10 days earlier by P. Austin, R.N. ("Nurse Austin") that there were "NO vegetarian or vegan diets here [at] [Elmira Correctional Facility]."

stomach pain, are not borne out by the medical records. As noted above, the "imminent danger of serious physical injury," 28 U.S.C. § 1915(g), must be present at the time the inmate files his complaint. Here, Plaintiff filed his Complaint, pursuant to the prison mailbox rule, on June 30, 2016. The AHRPNs for the month of June (See Dkt #17-2) indicate that Plaintiff was seen on by medical staff on June 1, 3, 4, 5, 8, 9, 11, 12, 13, 14, 15, 18, 19, 22, 23, 25, 29, and 30. Conspicuously absent from these medical records are *any* mention by Plaintiff or his medical providers of constipation, vomiting, bloody urine, rectal bleeding, or stomach pain. In fact, Plaintiff frequently verbalized no physical complaints. (See Dkt #17-2 (AHRPNs dated 6/12/15; 6/13/15)). When he did voice complaints, they concerned other medical issues that plainly did not present an "imminent danger of serious physical injury," such as Plaintiff's request for a special shampoo for his Bowenoid papulosis,[5] or for Flexeril or Tylenol for his shoulder pain. (See

---

5

Plaintiff complained about inadequate treatment for Bowenoid papulosis in at least one of his prior lawsuits. See Tafari v. Weinstock, No. 07CV0693, 2010 WL 3420424, at *5 (W.D.N.Y. Aug. 27, 2010). There, the Court (Scott, M.J.) noted that primary defendant, Dr. Weinstock, examined Plaintiff and found that there was no recurrence of the premalignant lesions, with which Plaintiff had been diagnosed in 1998. Dr. Weinstock referred Plaintiff to a dermatologist, Dr. Zaneder Miranda, who confirmed that the condition had not recurred, but nevertheless recommended the vitamins, showers with specific soap and shampoo, jock strap and cotton mattresses requested by Plaintiff. Dr. Weinstock declined to provide the items recommended by the dermatology consultant, stating that these recommendations bore no relationship to Bowenoid papulosis, that "[t]he absence of the condition after several years is proof of its successful treatment and eradication[,]" and that Dr. Miranda had confirmed his conclusion that the condition was cleared. Id. (citation to record omitted). The postinflammatory hypopigmentation complained of by Plaintiff was "simply a benign scarring manifested by loss of skin pigment and requires no intervention." Id. Furthermore, "[n]one of [Dr. Miranda's] recommendations would have any

Dkt #17-2 (AHRPNs dated 6/12/15; 6/18/15; 6/19/15)). Although Plaintiff apparently was staging a hunger strike during this period, the nurses consistently noted that his mucous membranes were moist, he ambulated without difficulty, and his gait was steady. (See Dkt #17-2 (AHRPNs dated 6/8/15/ 6/9/15; 6/11/15; 6/12/15)).

In short, at the time Plaintiff filed his Complaint, he was not suffering from a condition that placed him in imminent danger of serious physical injury. The Court notes that the lack of a vegetarian diet and the constipation this allegedly causes has been previously determined not to be a serious medical problem. In one of Plaintiff's previous lawsuits, Tafari v. Weinstock, No. 07CV0693, 2010 WL 3420424 (W.D.N.Y. Aug. 27, 2010), he claimed that Dr. Weinstock violated his rights by failing to direct that he receive a vegetarian diet due to a purported food allergy which alleged caused him to experience constipation, vomiting and stomach pain. Id. at *6 (citation to record omitted). The Court (Scott, M.J.) there held that Plaintiff had failed to establish that he had been denied a medically prescribed diet. However, even assuming that he had, Plaintiff had "not presented evidence in the record

---

influence upon the development of Bowenoid papulosis (warty growths caused by viral infection with the human papillomavius—HPV)." Id. (citation to record omitted). Magistrate Judge Scott found that "Dr. Weinstock's failure to provide the plaintiff with vitamins or the brand of soap and shampoo desired by the plaintiff does not constitute deliberate indifference to a serious medical need." Id.

from which a reasonable fact finder could conclude that the symptoms alleged . . . . represented a condition of urgency or resulted in degeneration or extreme pain sufficient to implicate an Eighth Amendment violation on the part of Dr. Weinstock." Id. at *7. Plaintiff's repackaged 2016 allegations in this lawsuit about the medical issues stemming from the purported denial of a vegetarian diet add nothing to what was presented to Magistrate Judge Scott in 2010, who found that Plaintiff was not suffering from a "serious medical need" as a result. Taking the entire record into account, including Plaintiff's submissions thus far in this action (which include many years of medical records), viewed in conjunction with Dr. Braselmann's declaration, the Court concludes that Plaintiff was not suffering any medical condition that would support a finding of imminent danger of serious physical injury at the time he filed the Complaint. Indeed, as noted above, the specific symptoms cited his Complaint that allegedly created the "imminent danger" are not mentioned in the contemporaneous medical records. Therefore, the Court concludes that Plaintiff is not entitled to the imminent-danger exception to the three-strikes rule under Section 1915(g). If he desires to continue to prosecute this lawsuit, he must pay the full filing fee.

## CONCLUSION

For the foregoing reasons, the Court finds that the record evidence, which includes Plaintiff's medical records while in the

custody of DOCCS, establishes that the Court's preliminary finding of imminent danger cannot be substantiated. Accordingly, the Court grants Defendants' motion to revoke Plaintiff's IFP status. Plaintiff is ordered to pay the full $400 filing fee, with credit to be afforded for any amounts previously collected from his prison account, within (30) thirty days of the date of this Decision and Order. Furthermore, if Plaintiff fails to timely comply with the Court's directive to pay the full filing fee, his Complaint will be dismissed with prejudice by the Clerk of Court without further order of the Court. The Court will hold Defendants' summary judgment motion in abeyance pending Plaintiff's payment of the filing fee. If Plaintiff timely pays the full filing fee, the Court then will consider Defendants' summary judgment motion. If not, his Complaint will be dismissed.

**IT IS SO ORDERED.**

S/Michael A. Telesca
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: April 20, 2017
Rochester, New York